## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAVIER DE LA ROSA, JR., | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. B-17-cv-00099 |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## <u>MAGISTRATE JUDGE'S<br>REPORT AND RECOMMENDATION</u>

Before the Court is Petitioner Javier De La Rosa, Jr.'s pro se "Petition for a Writ of Habeas Corpus by a Person in State Custody" (hereinafter, De La Rosa's "§ 2254 Petition" or "Petition"). Dkt. No. 1. The Court is also in receipt of Respondent's "Motion for Summary Judgment with Brief in Support" ("Respondent's Motion"). Dkt. No. 77. For the reasons stated herein, it is recommended that (1) Respondent's Motion be **DENIED**, (2) De La Rosa's Petition be **GRANTED**, unless an out-of-time appeal is extended, and (3) this case be **REMANDED** to the 107th Judicial District Court, for reentry of judgment upon which the time for De La Rosa to file a notice of appeal will begin anew.

## I. Jurisdiction

This Court has jurisdiction over De La Rosa's Petition pursuant to 28 U.S.C. § 1331 and § 2254.

## II. Background and Procedural History

### A.  De La Rosa's conviction and sentencing

Javier De La Rosa, Jr. was arrested for the murder of Tiffany Vanessa Galvan on August 25, 2010.  Dkt. No. 16-4 at 22–24.  On October 8, 2010, a Cameron County, Texas, juvenile court found probable cause to believe that De La Rosa had committed murder.  Dkt. No. 71-1 at 28–29.  The court transferred the case to the 197th Judicial District Court for De La Rosa to be tried as an adult.  *Id.*

A grand jury indicted De La Rosa for capital murder on January 12, 2011.  Dkt. No. 16-4 at 24.  He pleaded guilty to the lesser included offense of murder on March 8, 2012.  Dkt. No. 15-15 at 4–8.  Following a trial on punishment, a jury sentenced De La Rosa to 90 years of imprisonment.  Dkt. No. 16-7 at 59–60.  Judgment was entered on May 4, 2012, and the trial court noted that De La Rosa had waived "his right to direct appeal or post-conviction writs of habeas corpus as to his guilty plea and conviction for the offense of Murder."  *Id.* at 60–64.  De La Rosa filed a notice of appeal on June 5, 2012.  *Id.* at 81.

### B.  De La Rosa's direct appeal

#### 1.  *During representation by Garza*

Reynaldo Garza, III was appointed to serve as De La Rosa's appellate counsel.  Dkt. No. 16-7 at 81.  Noting the trial court's certification that De La Rosa did not have the right to appeal, the Thirteenth Court of Appeals (the "appellate court" or the "Thirteenth Court") ordered Garza to brief the issue of De La Rosa's appellate rights.  Dkt. No. 18-15 at 2.  Garza complied on July 18, 2012, and filed a

motion for the appellate court to hold that De La Rosa's waiver of appeal did not apply to his sentencing proceedings.  Dkt. No. 18-12 at 8, 10.  The appellate court granted the motion on November 16, 2012.  *Id.* at 1.

Garza filed an *Anders* brief seeking to withdraw from his representation of De La Rosa on April 3, 2013.[1]  Dkt. No. 16-2.  De La Rosa responded to the *Anders* brief with a pro se motion for an extension of time to file a reply brief, alternatively to be construed as De La Rosa's pro se response to the *Anders* brief.  Dkt. No. 42-3 at 22–23.  On July 30, 2013, the Thirteenth Court abated the appeal for "a determination of what constitutes a complete record."  Dkt. No. 19-3 at 61–62.

On August 15, 2013, the trial court held a hearing, with De La Rosa present, "to determine status of record on appeal from the Thirteenth Court of Appeals." Dkt. No. 19-15.  An assistant district attorney informed the court that he and De La Rosa had "entered into an agreement to supplement the record with those three items that the cause has been remanded for this Trial Court to make a determination on."  *Id.* at 5.  In an "Agreed Supplementation of the Record by Written Stipulation" with the State, De La Rosa stipulated that several records had been hand-delivered to him.  Dkt. No. 16-8 at 4.  Upon hearing about the stipulation, the trial court found that the relevant documents had been inadvertently omitted from the record on appeal, but had been made available to De La Rosa, by agreement of the parties, and were to be sent to the Thirteenth Court. *Id.* at 6.  The next day, the trial court received a previously mailed, pro se motion by

---

[1] An "*Anders* brief" refers to the brief filed when an appellate attorney "seeks to withdraw from a direct criminal appeal on the ground that the appeal lacks an issue of arguable merit."  *United States v. Flores*, 632 F.3d 229, 231 (5th Cir. 2011).  This concept will be discussed at length below.

De La Rosa to be represented by counsel at the hearing regarding the completeness of the record.  Dkt. No. 16-10 at 41.  The trial court denied the motion as untimely "because Defendant failed to urge said motion at the hearing and because he did not file it until the day after the hearing was held."  *Id.* at 46, 48.  His case returned to the appellate court, De La Rosa submitted a new pro se filing on November 18, 2013, to be construed in the alternative as another pro se response to Garza's *Anders* brief.  Dkt. No. 42-3 at 39.

The appellate court entered an order abating the appeal on January 6, 2014.  Dkt. No. 18-10.  In its order, the court acknowledged the various pro se motions from De La Rosa, and considered them "together with the other pro se pleadings on file, as appellant's pro se brief in this matter."  *Id.* at 2.[2]  The court stated: "After our independent review, we conclude that there are 'arguable' appellate issues in this case.  For instance, appellant has briefed issues pertaining to jurisdiction, the right to appeal, and the completeness of the appellate record."  *Id.* at 3.  The court noted that Garza "did not have the entire record when he filed his *Anders* brief."  *Id.* The court granted Garza's motion to withdraw, abated the appeal, and remanded the case to the trial court for appointment of a new appellate attorney.  *Id.*  A brief on the merits was to be due thirty days after the filing of a supplemental record of the proceedings.  *Id.* at 3–4.

---

[2] Among other issues, De La Rosa's pro se filings had asserted that (1) the trial court lacked jurisdiction over his indictment for capital murder, because the juvenile court only considered conduct related to first-degree murder when it waived its exclusive jurisdiction over him, (2) he had the right to appeal, and (3) the appellate record was still insufficiently incomplete in that it lacked the full juvenile court record (precluding a determination on what conduct the juvenile court considered), and he was not represented by counsel at the abatement hearing to determine what constituted a complete record.  Dkt. No. 42-3.

### 2.  *During representation by RuBane*

Rebecca RuBane was appointed to serve as De La Rosa's new appellate counsel on January 13, 2014.  Dkt. No. 16-10 at 54.  The appellate court reinstated De La Rosa's appeal and set a deadline for RuBane to file the appellant's brief by February 14, 2014.  Dkt. No. 16-17.  Despite granting RuBane three extensions of time, the court had still not received the appellant's brief by July 1, 2014.  Dkt. No. 16-19.  In the meantime, De La Rosa filed (1) a letter asking to be notified of all court actions, because RuBane was not sending him any communications, (2) a letter he sent to RuBane, asking why he had not heard from her and urging her to raise the "arguable issues" identified by the appellate court, and (3) a motion for leave to file pro se requests for another abatement of the appeal and appointment of new appellate counsel.  Dkt. No. 42-3 at 92, 93, 96, 97, 100.  In one such motion, filed May 30, 2014, De La Rosa stated that RuBane had not contacted him in the three months since she had been appointed.  *Id.* at 97.

The appellate court ordered RuBane to file a brief by July 11, 2014.  Dkt. No. 16-19.  RuBane requested another extension of time to file the brief, and the court issued a "final" order for her to do so by July 18, 2014.  Dkt. No. 17-1.  RuBane failed to file the brief.  Dkt. No. 17-11.  The court again abated the appeal and remanded the case to the trial court for a hearing to determine "(1) whether appellant desires to prosecute this appeal; (2) why appellant's counsel has failed to file a brief and whether counsel has effectively abandoned the appeal; (3) whether appellant has been denied effective assistance of counsel; (4) whether appellant's

counsel should be removed; and (5) whether appellant is indigent and entitled to new court-appointed counsel." *Id.*

The trial court held a hearing on August 4, 2014, at which RuBane stated that she had been ill but anticipated that she could "have the brief ready within two weeks from today's date." Dkt. No. 19-14 at 4. The trial court stated it would make findings that the brief would be submitted in two weeks and that there was not a need to appoint a new attorney. *Id.* at 5. A supplemental clerk's record was filed in the appellate court on August 6, 2014. Dkt. No. 16-12.

On August 18, 2014, RuBane filed the "Appealant's Breif," which described itself as an *Anders* brief. Dkt. No. 16-3 (errors in original). RuBane's *Anders* brief exclusively presented points that had been raised by Garza in his *Anders* brief, using slightly different word choice and phrasing throughout. *Compare id. with* Dkt. No. 16-2. RuBane sought permission to withdraw from representation of De La Rosa. Dkt. No. 16-3 at 18. The appellate court ordered RuBane to resubmit her *Anders* brief within 10 days, as it "failed to: (1) provide appellant with a form motion for pro se access to the appellate record, mailing address of the Court, and instructions to file the motion within 10 days and (2) inform appellant of his pro se right to seek discretionary review should the Court of Appeals declare his appeal frivolous." Dkt. No. 18-7. RuBane did not do so, instead notifying the court that her computer had "crashed." Dkt. No. 17-20 at 3. De La Rosa filed a pro se letter asking the court to strike RuBane's *Anders* brief, or to grant him an extension of time to file a response. Dkt. No. 42-3 at 104. The court granted the extension. Dkt.

No. 44.

The appellate court ordered RuBane to comply with its order to correct her *Anders* brief by September 19, 2014, and specified that if she did not, she would have to appear to "show cause why she should not be held in contempt of court." Dkt. No. 18-1.  RuBane again did not comply.  Dkt. No. 17-20 at 4.  Over the next few days, the clerk of the court attempted to contact RuBane to assist her with filing the requisite information.  *Id.*  RuBane notified the court that "she was ready to file her notice, but was experiencing technical difficulties because her computer had again 'crashed.'"  *Id.*  RuBane subsequently filed two more documents, but neither complied with the court's order.  *Id.*

The appellate court held a show-cause hearing on September 25, 2014.  Dkt. No. 18-2.  Despite being ordered to appear, RuBane did not attend the hearing.  *Id.* at 3.  The court stated it had "no choice but to issue an order of contempt in this case and to assess costs against Ms. RuBane."  *Id.*  at 5.  The court then explained:

> We will put together all of the documentary evidence that we need and issue an order giving her notice of this contempt, and we will take it upon ourselves to see that the Defendant in this case gets the notices that – that is required under law so that we can move this case forward as we should.
> It's been over two years since Mr. De La Rosa was sentenced, and we feel that he needs to move on with what he wants to do with this case.  I'm sure he's going to want to file his own brief, and so, with the information that we send him, he should be able to do so.

*Id.* at 5-6.  The court's subsequent order found RuBane in contempt "for willfully and intentionally failing to comply" with the court's order and for failing to appear at the show-cause hearing.  Dkt. No. 17-20 at 5.  Id.  De La Rosa filed a second pro

se motion to strike RuBane's *Anders* brief, or in the alternative, to receive an extension of time to file a pro se response.  Dkt. No. 42-3 at 108.  The court granted De La Rosa two more extensions of time to file a pro se response to RuBane's *Anders* brief, but he did not do so.    Dkt. No. 17-14; Dkt. No. 18-8.

The appellate court affirmed the judgment of the trial court on February 12, 2015.  Dkt. No. 16-14.  In its memorandum opinion, the court stated that it had "reviewed the entire record and counsel's brief, and . . . found nothing that would arguably support an appeal."  Dkt. No. 18-19 at 3.  The court noted it had "granted three motions for extension of time to give De La Rosa an opportunity to file a pro se brief," but "[a] reasonable amount of time has passed, and no pro se response has been filed."  *Id.* at 3 n.3.  The court granted RuBane's motion to withdraw, and advised De La Rosa that no substitute counsel would be appointed.  *Id.* at 4.

De La Rosa filed a pro se petition for discretionary review ("PDR") in the Texas Court of Criminal Appeals ("TCCA") on May 22, 2015.[3]  Dkt. No. 19-3.  He raised six grounds in his PDR: (1) that, after finding arguable issues, the appellate court could not sustain a second *Anders* brief that did not discuss the previously found issues, (2) that the appellate court should have removed RuBane from the appeal after holding her in contempt, (3) that the appellate record should have included the record of De La Rosa's juvenile court proceedings, (4) that De La Rosa should have been afforded the assistance of counsel at the abatement hearing about the completeness of the record on appeal, (5) that the appellate court erred in

---

[3] On March 23, 2015, De La Rosa received an extension of time from the TCCA to file his PDR by May 15, 2015.  De La Rosa mailed his PDR on May 12, 2015.  Dkt. No. 18-19; Dkt. No. 19-3 at 33.

applying a "no reversible error" standard upon reviewing the record for arguable issues, and (6) that there were several "arguable issues," rendering his appeal non-frivolous. *Id.*  Discretionary review was refused without written order on July 29, 2015.  Dkt. No. 19-2.

### C.  De La Rosa's post-conviction proceedings

On July 22, 2016, De La Rosa filed a state application for a writ of habeas corpus (De La Rosa's "state habeas application") under Article 11.07 of the Texas Code of Criminal Procedure.  Dkt. No. 21-1 at 4, 19.  The state habeas application raised two claims: (1) that trial counsel provided ineffective assistance by failing to object to the trial court's denial of a public trial during jury selection, and (2) that the trial court violated De La Rosa's Sixth Amendment right to a public trial during jury selection.  *Id.*  De La Rosa was represented by counsel, Kenneth Nash.  Dkt. No. 19-5 at 6.  The TCCA remanded the case to the state trial court.  Dkt. No. 19-9. On October 10, 2016, the trial court concluded that De La Rosa was not entitled to relief on any of the grounds asserted, and recommended that the state habeas application be denied.   Dkt. No. 19-5.  On February 1, 2017, the TCCA denied the application without written order on the findings of the trial court.  Dkt. No. 19-7.

De La Rosa filed the instant Petition seeking federal habeas relief on May 1, 2017.  Dkt. No. 1.  Respondent filed her first motion for summary judgment on July 26, 2017.  Dkt. No. 26.  De La Rosa contended that the state court record as filed by Respondent needed to be supplemented, and that he was unable to prepare a response to Respondent's arguments without copies of his pro se filings from the

Thirteenth Court of Appeals.  Dkt. Nos. 2, 27, 30.  The Court ordered Respondent to furnish De La Rosa's pro se filings.  Dkt. Nos. 31, 40.  Respondent submitted the pro se filings to the Court on January 12, 2018.  Dkt. No. 42.  Given the supplements to the record, the Court denied Respondent's original motion for summary judgment as moot on March 21, 2018.  Dkt. No. 69.  De La Rosa's response to the motion was received by the Court on March 28, 2018, and the Court advised that it would consider the arguments raised therein during its review of De La Rosa's case.  Dkt. Nos. 72, 79.  Respondent filed her second motion for summary judgment on April 11, 2018.  Dkt. No. 77.  The Court received De La Rosa's response on June 14, 2018, and a supplement on June 18, 2018.  Dkt. Nos. 84, 85.

### III.  De La Rosa's Claims[4]

De La Rosa's § 2254 Motion seeks to raise ten grounds for relief, two of which encompass multiple sub-claims.  Specifically, De La Rosa asserts that:

1) He was denied adequate appellate review when the appellate court did not require his second appellate counsel to file an advocate's brief on the merits, even though it previously had found there were "arguable issues" in the case;

2) He was denied the right to counsel at the abatement hearing regarding completeness of the record on appeal;

3) The appellate record did not include a complete record of the juvenile court proceedings, which prevented meaningful review of the trial court's

---

[4] Since filing his Motion, De La Rosa has indicated that he wishes to withdraw Grounds 6(a), 7, 9, and 10(d), and "partially withdraw" Grounds 5 and 8 as "independent claims for relief."  Dkt. No. 75 at 2; Dkt. No. 84 at 3, 4.

jurisdiction and whether De La Rosa's claims were wholly frivolous;

4) He was denied the right to counsel on appeal without a determination by the court of appeals that his appeal was "wholly frivolous;"

5) He was constructively denied the right to counsel on appeal because his second appellate counsel was ineffective and "did nothing to actually represent him;"

6) "Arguable issues" precluded a determination that his direct appeal was wholly frivolous, and first and second appellate counsel were ineffective for failing to raise these issues, specifically that: (a) De La Rosa's guilty plea was involuntary because it was induced by the threat of automatic life without parole while De La Rosa was still a juvenile, in violation of the Supreme Court's holding in *Miller v. Alabama*, (b) trial counsel were ineffective for failing to proffer any scientific, medical, or psychological expert testimony on the issue of juvenile brain development, (c) the trial court lacked jurisdiction, because the juvenile court only waived its exclusive jurisdiction over De La Rosa with respect to conduct constituting the offense of first degree murder, rather than conduct making up the capital murder charge for which he was later indicted, (d) the sentencing jury was an "unauthorized trier of fact" because De La Rosa entered his plea only to the trial court, and (e) the jury charge at sentencing was erroneous because it failed to include an instruction regarding extraneous offenses;

7) The trial court denied him the Sixth Amendment right to a public trial by

closing voir dire proceedings to the public;

8)  The trial court's lack of jurisdiction over De La Rosa constituted a denial of due process;

9)  The Supreme Court's holding in *Miller v. Alabama* is retroactively applicable to De La Rosa's case, thus, his guilty plea was involuntarily induced by the unconstitutional threat of an automatic life without parole sentence;

10)  Trial counsel were ineffective because they failed to (a) investigate or object to the trial court's lack of jurisdiction, (b) investigate the prosecution's inability to prove several capital elements of the capital murder charge, (c) advise De La Rosa of either of the preceding issues, (d) object when the trial court closed voir dire proceedings to the public, (e) investigate and present expert testimony on juvenile brain development, instead only cross-examining the prosecution's expert witness;

11)  Post-conviction state habeas counsel was ineffective for failing to investigate and raise all other issues.


## IV.  Legal Standards

### A. 28 U.S.C. § 2254.

Pursuant to 28 U.S.C. § 2254(d), a federal court can only grant habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[1] to a defendant convicted in state court if the state's adjudication of his constitutional

---

[1] Pub.L. No. 104-132, 110 Stat. 1214 (1996).

claims was: (1) contrary to, or involved an unreasonable application of clearly established federal law, as established by the Supreme Court; or (2) based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). A state court's decision is contrary to clearly established federal law if that court applied a rule in contradiction to governing law set forth by the Supreme Court, *or* if the court reached a different result from those cases on "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (emphasis added). When a state court decision applies the correct Supreme Court rule to the facts of a particular case, a reviewing court must determine whether the state court's application of law was objectively unreasonable. *See id.* at 409-11.

A reviewing court cannot issue the writ simply because it finds that the relevant state-court decision applied clearly established federal law erroneously or incorrectly; rather, that application must be unreasonable as well. *Id.* at 411. Courts determine reasonableness by determining whether no "fairminded jurists could disagree" as to the application of the arguments and theories supporting the state court's decision to the applicable law. *See Harrington*, 562 U.S. at 102. The standard is "difficult to meet," because "it was meant to be." *Id.*

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility fairminded jurists could disagree* that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," *not a* substitute for ordinary error correction through appeal.

*Id.* at 102-03. (emphasis added) (internal citations omitted). "Review under 2254(d)(1) must be 'highly deferential' to the state court's decision, and must give that decision 'the benefit of the doubt.'" *Langley v. Prince*, 890 F.3d 504, 512 (5th Cir. 2018).

Only the state court's "ultimate legal conclusion" is reviewed for unreasonableness. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). AEDPA's standard of review applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent][,]" even if that state court fails to cite or is unaware of such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). Finally, a state court's factual findings are presumed correct unless a petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness also applies to unarticulated findings necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

**B. Federal Rule of Civil Procedure 56**

The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 56(a). In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*, *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (same). Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for

summary judgment. Rule 56 requires that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), *cert. denied*, 531 U.S. 831, 121 S.Ct. 84 (2000). District courts considering motions for summary judgment in ordinary civil cases are required to construe the facts in the case in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255. Nevertheless, Rule 56's application in the federal habeas context differs from its application in "the average civil case." *Torres v. Thaler*, 395 Fed. Appx. 101, 106 (5th Cir. 2010) (citing *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004)). As the Fifth Circuit has explained:

> the rule applies only to the extent that it does not conflict with the habeas rules. Therefore, § 2254(e)(1)-which mandates that findings of fact made by a state court are "presumed to be correct"— overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.

*Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

## V. Discussion

In De La Rosa's first claim ("Ground One"), he argues that he "was denied adequate and effective [appellate] review in violation of the 14th Amendment when after a finding of 'arguable issues' the state appellate court failed to require court-

appointed counsel to file an advocate's brief on the merits." Dkt. No. 1 at 6. He

states: "Because the state appellate court made a determination that there were

'arguable issues that could have been raised on appeal,' it was a violation of the

14th Amendment to the U.S. Constitution for the state appellate court to consider

the merits of the appeal without requiring 2nd Anders counsel (or additional new

appellate counsel) to file an advocate's brief on the merits." *Id.* at 7. De La Rosa

details his claim as follows:

> The problem was that, after finding several "arguable issues"
> the State appellate court AFFIRMED De La Rosa's conviction without
> requiuring 2nd Anders counsel, or a new 3rd court-appointed appellate
> counsel, to prepare and file an advocate's breif on the merits. Rather,
> the state appellate court allowed 2nd Anders counsel to file another
> Anders brief, which was substantially identical in content, line by line,
> as 1st Anders counsel's Anders breif and which wholly failed to address
> any of the previously identified "arguable issues."

Dkt. No. 75 at 17–18 (errors in original). He argues that the TCCA's denial of relief

on this claim unreasonably applied the Supreme Court's decision in *Penson v. Ohio*.

Dkt. No. 75 at 23, 24.

Respondent's primary contention is that Ground One is procedurally

defaulted because De La Rosa did not raise it in the appellate court through a pro se

response to RuBane's *Anders* brief. Therefore, Respondent argues, the claim was

unexhausted in state court and never properly presented to the TCCA, and because

De La Rosa cannot now go back to properly present it, the claim is defaulted.

Respondent also asserts that the state court decision was not "contrary to" or "an

unreasonable application of" clearly established Supreme Court precedent.

16/51

### A.  Procedural Default as to Ground One

Under the AEDPA, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  A prisoner must give state courts "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights."  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Failure to "exhaust state court remedies by presenting the claim to the highest available state court" may render the claim procedurally defaulted, and generally bar a federal court from considering the merits of the claim on habeas review.  *In re Davila*, 888 F.3d 179, 187 (5th Cir. 2018).  "If a petitioner fails to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred, there is a procedural default for purposes of federal habeas."  *Trevino v. Stephens*, No. 2:16–CV–24, 2017 WL 7693357, at *3, *adopted by*, 2018 WL 911842, (S.D. Tex. Jul. 10, 2017) (citing *Coleman*, 501 U.S. at 735 n.1).  Stated differently, "a claim is both unexhausted and procedurally defaulted where 'the prisoner fails to exhaust available state remedies, and the state court to which the prisoner would have to present his claims in order to exhaust them would find the claims procedurally barred[.]'"  *Norman v. Stephens*, 817 F.3d 226, 231 n.1 (5th Cir. 2016) (quoting *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005)).

In Texas, a habeas petitioner "can satisfy the exhaustion requirement by

presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas-corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure in a procedurally proper manner." *Ricketts v. Davis*, No. 4:16-CV-403-O, 2018 WL 2193908, at *2 (N.D. Tex. May 14, 2018).  Given that the claims must have been raised to the TCCA in a procedurally proper manner, it will typically be the case that claims are unexhausted where they were presented "to a state's appellate courts for the first and only time in a petition for discretionary review."  *Myers v. Collins*, 919 F.2d 1074, 1077 (5th Cir. 1990); *see also Flores v. Johnson*, 957 F. Supp. 893, 903 (W.D. Tex. 1997) ("The presentation of claims for the first time on discretionary review to the state's highest court does not constitute 'fair presentation' for exhaustion purposes.").  The "exhaustion doctrine . . . requires that the chosen avenue of post-conviction relief, whether direct or collateral, be pursued in such a manner so as not to present claims to a state's appellate courts for the first and only time in a petition for discretionary review."  *Myers*, 919 F.2d at 1077. This is because doing so would typically leave the TCCA without an appellate decision to review.  *See, e.g.*, *Ex parte Queen*, 877 S.W.2d 752, 755 n. 4 (Tex. Crim. App. 1994).   The general exhaustion rule, therefore, may more specifically be described as providing that a Texas habeas petitioner has only satisfied the exhaustion requirement "if he presented his claim to the TCCA through a PDR, if he also raised it on direct appeal to the intermediate court of appeals, or through a state application for writ of habeas corpus."  *Garza v. Davis*, No. M–16–678, 2017

WL 3314282, at *2 (S.D. Tex. Jul. 18, 2017).

However, if a claim pertains to systemic error alleged to have occurred in the intermediate court of appeals, the petitioner may not have been able to first raise the claim in the intermediate appellate court, and would not have needed to do so in order to satisfy the requirement that the claim be properly presented to the state's highest reviewing court. *See, e.g.*, *Heidelberg v. King*, No. 2:12cv112 KS–MTP, 2013 WL 4483234, at *6 n.14 (S.D. Miss. Aug. 19, 2013) ("Obviously, Heidelberg could not have raised ineffective assistance of appellate counsel on direct appeal as those claims were not ripe. However, he could have raised them in his petition for certiorari [to the highest state court] or in his motion for post-conviction relief, but he did not."); *Taveras v. Smith*, 388 F. Supp. 2d 256, 265 (S.D.N.Y. 2005) (finding denial of appellate counsel claim was exhausted, even though petitioner had not raised the issue in the intermediate appellate court, because he raised it when seeking discretionary review from the highest state court). Nothing would prevent the TCCA from being able to review this type of appellate process-related claim, raised for the first time in a PDR. *See, e.g.*, *Kelly v. State*, 436 S.W.3d 313, 316 (Tex. Crim. App. 2014) (reviewing an appellant's claim, raised for the first time in a PDR, "that the court of appeals violated his rights to due process and due course of law by deeming his appeal to be frivolous without first granting him access to the appellate record so that he could prepare an adequate response to his appointed counsel's *Anders* brief"); *Ex parte Owens*, 206 S.W.3d 670, 675 (Tex. Crim. App. 2006) (noting that, by failing to advise the appellant of his right to file a PDR, counsel had

precluded him from an opportunity to convince the TCCA that his right to counsel was "compromised when (or in the particular way that) his appellate attorney filed an *Anders* brief"); *see also Cann v. State*, No. PD-1433-09, 2010 WL 986404, at *1 (Tex. Crim. App. Mar. 17, 2010) (reviewing an appellant's claim, raised for the first time in a PDR, that the appellate record was incomplete); *Garner v. State*, 300 S.W.3d 763, 765 (Tex. Crim. App. 2009) (reviewing an appellant's claim, raised for the first time in a PDR, that an appellate court erred by analyzing the points raised in an *Anders* brief for substantive merit, rather than determining whether they were arguable).

De La Rosa asserts that his first opportunity to raise this appellate process-related claim was through a PDR. *See, e.g.*, Dkt. No. 75 at 12 n.2. As stated above, De La Rosa's Ground One is that the appellate court violated his right to effective and adequate appellate review when it affirmed his conviction without receiving any briefing on what it had previously identified as "arguable appellate issues." This claim could not have been raised until *after* De La Rosa's appeal had already been adjudicated by the appellate court. De La Rosa's first opportunity to raise this claim to a state court was to the TCCA through a PDR, and, as Respondent acknowledges, he did so. Dkt. No. 77 at 15; Dkt. No. 19-3 at 21–22.

Respondent argues that De La Rosa's first opportunity to present Ground One was to the appellate court via a pro se response to RuBane's *Anders* brief. There is some support for the notion that, once an *Anders* brief has been filed, the appellant's failure to file a pro se brief in response may lead to his available claims

later being deemed procedurally defaulted on federal habeas review. *United States v. Dantzler*, No. 10–00024–01, 2012 WL 6086869, at *2 (W.D. La. Dec. 6, 2012); *United States v. Garcia-Arguedas*, 2011 WL 13209809 (S.D. Tex. 2011); *see also Truitt v. Stephens*, 2014 WL 6679204 (S.D. Tex. Nov. 25, 2014) (finding claims not submitted in a pro se *Anders* response brief were not raised on appeal). But the Court has been unable to locate a case in which an appellant was expected to raise an unripe claim, pertaining to defective appellate review, in this response.

Further, the Court disagrees with the premise that "De La Rosa's situation is similar to the litigant's situation in *Satterwhite* [*v. Lynaugh*, 886 F.2d 90 (5th Cir. 1989)]." Dkt. No. 77 at 18. In *Satterwhite*, the Fifth Circuit determined that a petitioner's claims were not exhausted where he raised them via a PDR, after he had also attempted to raise them in a pro se brief in the intermediate appellate court. *Id.* at 93. But when Satterwhite filed the pro se brief he was still represented by counsel, who had filed a merits brief and had not sought withdrawal via an *Anders* brief. Litigants are not entitled to "hybrid representation," and therefore, Satterwhite's attempt to raise claims *in addition to* those presented by his attorney could not properly exhaust those pro se claims. *Id.*; *see also United States v. Steinbrecher*, 112 Fed. Appx. 987, 988 (5th Cir. 2004) (no right to hybrid representation). *Satterwhite* did not pertain to a litigant filing a pro se response to an *Anders* brief, in which case the bar on "hybrid representation" would no longer have been in effect. *Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005). And, more importantly for purposes of this case, Satterwhite's claims did not appear

to arise from defects in the appellate process, but instead were already available to him in the appellate court. *Satterwhite*, 886 F.2d at 91. *Satterwhite* does not encompass Respondent's broad contention that "claims raised in a PDR after an *Anders* brief are not fairly presented.'" Dkt. No. 77 at 22.

Ground One was not a ripe claim until the appellate court granted RuBane's motion to withdraw and affirmed the trial court's judgment without appointing new counsel to pursue the "arguable issues." This was the event at the heart of the claim—not RuBane's submission of an *Anders* brief. De La Rosa could hardly have included in his pro se response to RuBane's *Anders* brief that he believed the appellate court's future, possible decision to allow RuBane to withdraw would be constitutional error. De La Rosa could not have raised a claim that did not yet exist. Because De La Rosa raised the claim in his pro se PDR, and no barrier would have prevented the TCCA from considering it on the merits, he presented the claim in a procedurally proper fashion, and Ground One was exhausted.

In the alternative, even accepting the proposition that De La Rosa was to anticipate the allegedly defective appellate review and raise it in his response to RuBane's *Anders* brief, his pro se filings attempted to do so. De La Rosa argues that his pro se filings from the Thirteenth Court, taken together, demonstrate that he fairly presented his *Anders*-related claims to the appellate court before his conviction was affirmed. The Court agrees that, to the extent that De La Rosa could have alerted the appellate court to his position that a decision to sustain RuBane's *Anders* brief would violate his rights, his pro se filings made this attempt.

De La Rosa repeatedly challenged the possibility that RuBane could be allowed to withdraw, and insisted that a finding of "arguable issues" required a merits brief.  Dkt. No. 42-3 at 103–111.  He moved twice for the appellate court to strike RuBane's *Anders* brief, and once for the court to abate his appeal and remand the case for appointment of new counsel.  *Id.*  When it affirmed De La Rosa's conviction, the Thirteenth Court noted that De La Rosa had failed to file a pro se brief in response to RuBane's *Anders* brief, despite being granted three extensions of time to do so.  Dkt. No. 18-9 at 3 n.3.  But a pro se response to an *Anders* brief need not have followed the technical requirements of an advocate's brief.  Instead, the Texas courts view this type of pro se response as "not one subject to the requirements of Tex. R. App. P. 74 because its purpose is not to permit the court of appeals to decide the case on the merits; it is intended only to alert the appellate court to any matters that the defendant believes might be arguable in a brief on the merits."  *In re Schulman*, 252 S.W.3d 403, 409 n. 23 (Tex. Crim. App. 2008).  The Thirteenth Court had likewise accepted De La Rosa's earlier motion to construe several other pro se filings as his pro se brief in response to Garza's *Anders* brief. Dkt. No. 18-10 at 2.

To reiterate, De La Rosa would not have been able to alert the appellate court to Ground One as an arguable matter for a brief on the merits, given that the claim was not ripe.  But even if he could have, his filings noticed the court of his preemptive position on what would become its ultimate decision to affirm without receiving briefing on the arguable issues.  In a September 14, 2014, letter to the

Thirteenth Court, De La Rosa stated:

> I do not understand what is going on. This Court already said there
> was stuff to argue in my appeal and that my old appeal attorney was
> wrong to file an Anders brief. Then I got a new appeal attorney and
> she would never answer my letters and never told me anything. One
> time my new appeal attorney said her secretary was sick and then
> recently she told the trial court she was sick. She keep not filing a
> brief on my behalf. When this Court finally threatened her with
> contempt she quickly filed an Anders brief. That does not sound right
> or fair. I don't think she should be able to file an Anders brief when
> this Court already held there was stuff to argue in my appeal.
> Especially, when my new appeal attorney never even completed the
> appellate record with additional parts of the juvenile court record . . . .
> How can she say the appeal has nothing to argue when she didn't even
> try to fix the record – which this Court already said stuff was still
> missing from the appeal record.
>      I think that my new appeal attorney just filed the Anders brief
> because she didn't want to do her job and research my case and she did
> not want to be found in contempt. I think she should be found in
> contempt. Because all the past orders of this Court told her she must
> file a brief on the merits. An Anders brief is not a brief on the merits.

Dkt. No. 42-3 at 104–106 (errors in original). He then asked the court to "strike the

Anders brief, hold new [appellate] counsel in contempt and appoint me new counsel

to actually fight my appeal." *Id.* at 106. De La Rosa briefed this issue in more

detail in an October 6, 2014, pro se motion, in which he stated: "When an appellate

court holds, after an Anders brief is filed, that an appeal does have arguable issues

and is not wholly frivolous newly appointed appellate counsel has a duty to file a

merits brief that addresses the arguable issues pointed out by the appellate court."

*Id.* at 110–111. He again requested the court strike RuBane's *Anders* brief and

appoint new appellate counsel "with specific instructions to file a merits brief

addressing the issues that [the] court priorly held are arguable." *Id.* at 111. He

also urged that "[w]hen an appellate court holds that an Anders brief is unfounded

and that an appeal has arguable issues the proper relief is to abate the appeal 'with orders to appoint other counsel to present those and any other grounds that might support the appeal.'"  *Id.* at 110 (citing *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991)).  Respondent is correct to note that De La Rosa never filed what he formally designated to be a pro se brief, and that the Thirteenth Court indicated no pro se response had been filed in its memorandum opinion.  But De La Rosa's various pro se filings noticed the appellate court of his opposition to its eventual decision to sustain the *Anders* brief and decide the case without receiving additional briefing, and could have allowed it an opportunity to address the prospective claim. While De La Rosa could not assert the appellate court deprived him of effective appellate review by sustaining RuBane's *Anders* brief, because it had not yet occurred, he certainly filed motions and raised arguments in response to RuBane's *Anders* brief that would have indicated his opposition to such a decision.  The court denied these motions.  Dkt. Nos. 17-12, 17-13, 17-17, 18-9 at 5 n.5.

In sum, De La Rosa's first opportunity to raise Ground One—a claim that his appellate rights were violated by the appellate court affirming his conviction without receiving briefing on what it had deemed to be arguable issues—was through a PDR to the TCCA.  Respondent acknowledges that this claim was "raised in [De La Rosa's] PDR," and that "Ground 1 in [De La Rosa's] federal petition corresponds with ground 1 in his PDR."  Dkt. No. 77 at 15.  As discussed above, there was no procedural barrier to prevent the TCCA from considering this type of claim, and the claim was exhausted.  De La Rosa did not raise this claim in his state

habeas application, but he was not required to do so for exhaustion purposes.  In the alternative, even accepting Respondent's position that De La Rosa must have raised the issues central to Ground One in the appellate court, prior to the claim being ripe, his pro se filings attempted to do so.  Under either approach, De La Rosa's claim is not procedurally defaulted.  Ground One is ripe for federal habeas review.

### B.  Merits of Ground One

De La Rosa presented his claim to the TCCA in a pro se PDR, and the TCCA refused discretionary review without written order.  Dkt. No. 19-2.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court has adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  "[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 98.  And, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*  In this type of unexplained decision, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102.

The presumption that a claim was adjudicated on the merits extends to the TCCA's summary refusal of a PDR. *Dorsey v. Stephens*, 720 F.3d 309, 315–16 (5th Cir. 2013). As noted above, no state law procedural principles would have operated to bar the TCCA from considering De La Rosa's claim that the appellate court should not have sustained RuBane's *Anders* brief without receiving briefing on what it had deemed to be "arguable issues." The presumption that this claim was adjudicated on the merits has not been rebutted, and the Court will proceed with habeas review of TCCA's adjudication of Ground One on the merits.

The question for the Court is whether, as provided by Section 2254(d)(1), the TCCA's summary denial of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court has arrived at such a decision when it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court . . . or it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established law was objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 409 (2001). "[A] state-court decision is an unreasonable application of clearly-established federal law only if fairminded jurists could not disagree that the decision was inconsistent with

Supreme Court precedent." *Floyd v. Vannoy*, 894 F.3d 143 (5th Cir. 2018)).[5]  Where the last decision on the merits is silent as to its reasons, the habeas court should "look through the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018). But where there is *no* reasoned state court decision on the claim, the court "must determine what arguments or theories . . . could have supported the state-court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *see, e.g.*, *Floyd v. Vannoy*, 894 F.3d 143 (5th Cir. 2018) (granting habeas relief after conducting this analysis); *Langley v. Prince*, 890 F.3d 504 (5th Cir. 2018) (same).  Because there has never been a reasoned decision on De La Rosa's claim that the Thirteenth Court denied him effective appellate review, the Court will adopt the latter approach, only issuing a recommendation on relief after determining what arguments or theories could have supported the TCCA's denial of the claim regarding the Thirteenth Court's appellate process, and considering whether fairminded jurists could possibly disagree that the theories would unreasonably apply Supreme Court precedent.  The decision "is an 'unreasonable application' under 28 U.S.C. § 2254(d) only if, after this hypothetical inquiry, [the

---

[5] If De La Rosa properly exhausted this claim by raising it in the appellate court, the standard would remain the same, since habeas review examines the "last state court decision on the merits." *Wilson v. Sellers*, 138 S. Ct. 1188 (2018).  "Looking through" the TCCA's denial of the PDR, the Thirteenth Court did not provide a rationale for denying De La Rosa's attempts to strike RuBane's *Anders* brief or receive newly appointed counsel, other than that it had reviewed the record anew and found "nothing to arguably support the appeal."  The Court includes this rationale as a possible legal theory which could have supported the TCCA's denial of the PDR.

Court] determine[s] there was no reasonable basis for it." *Floyd*, at *12.

### 1. Clearly established Supreme Court precedent

The Court's "starting point" is "to identify the relevant Supreme Court precedent that was clearly established when the state court issued its decision." *Langley v. Prince*, 890 F.3d 504, 515–16 (5th Cir. 2018). The Equal Protection and Due Process Clauses of the Fourteenth Amendment "largely converge" to require that state appellate procedures "affor[d] adequate and effective appellate review to indigent defendants." *Smith v. Robbins*, 528 U.S. 259, 276 (2000) (quoting *Griffin v. Illinois*, 351 U.S. 12, 20 (1956)). "A State's procedure provides such review so long as it reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merits of that appeal." *Id.* The right to counsel on appeal may be traced back to the Supreme Court's decision in *Douglas v. California*, where it held that "where the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel . . . an unconstitutional line has been drawn between rich and poor." *Douglas v. California*, 372 U.S. 353, 357 (1963). It reasoned: "There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself." *Id.* The holding in *Douglas* guarantees an indigent criminal appellant the "right to have counsel until a case is determined to be frivolous and to receive a merits brief for a nonfrivolous

appeal." *Smith*, 528 U.S. at 276.

However, "[i]n some circumstances counsel may withdraw without denying the indigent appellant fair representation provided that certain safeguards are observed[.]" *Penson v. Ohio*, 488 U.S. 75, 80 (1988). The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Smith*, 528 U.S. at 278. Recognizing this limitation, the appellate procedures employed by state courts should "ensure those indigents whose appeals are not frivolous receive the counsel and merits brief required by *Douglas*," while also enabling "the State to 'protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent[.]'" *Id.* at 279 (quoting *Griffin*, 351 U.S. at 24.).

In 1967, the Supreme Court recognized the *Anders* procedure, a method for withdrawal of appellate counsel which also serves to "vindicate the constitutional right to appellate counsel announced in *Douglas*." *Smith*, 528 U.S. at 273. Under the *Anders* framework:

> [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Anders v. California*, 386 U.S. 738, 744 (1967).  "The *Anders* brief is not a substitute for an advocate's brief on the merits."  *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 444 (1988).  Instead, it "assures that indigent defendants have the benefit of what wealthy defendants are able to acquire by purchase—a diligent and thorough review of the record and an identification of any arguable issues revealed by that review."  *Id.* at 439.  The brief "assists with the court in making the critical determination whether the appeal is so frivolous that counsel should be permitted to withdraw."  *Id.*  "[I]f the court concludes that there are nonfrivolous issues to be raised, it must appoint counsel to pursue the appeal and direct that counsel to prepare an advocate's brief *before deciding the merits*."  *McCoy*, 486 U.S. at 444 (emphasis added).

The Supreme Court further safeguarded the right to effective appellate review in *Penson v. Ohio*, where it held that a state appellate court erred "by failing to appoint new counsel to represent [the] petitioner after it had determined that the record supported 'several arguable claims.'"  *Penson*, 488 U.S. at 83.  The Supreme Court quoted the *Anders* admonition that "if [the appellate court] finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal."  *Id.*

> This requirement necessarily follows from an understanding of the interplay between *Douglas* and *Anders*.  *Anders*, in essence, recognizes a limited exception to the requirement articulated in *Douglas* that indigent defendants receive representation on their first appeal of right.  The exception is predicated on the fact that the Fourteenth Amendment—although demanding active and vigorous appellate representation of indigent criminal defendants—does not demand that States require appointed counsel to press upon their appellate courts

wholly frivolous arguments.  However, once a court determines that the trial record supports arguable claims, there is no basis for the exception and, as provided in *Douglas*, the criminal appellant is entitled to representation.  The Court of Appeals' determination that arguable issues were presented by the record, therefore, created a constitutional imperative that counsel be appointed.

*Id.* at 83–84.  The Supreme Court next examined the state appellate court's denial of counsel for the indigent appellant, stating:

[I]t is important to emphasize that the denial of counsel in this case left petitioner completely without representation during the appellate court's actual decisional process.  This is quite different from a case in which it is claimed that counsel's performance was ineffective.  As we stated in *Strickland*, the "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice . . . ."  The present case is unlike a case in which counsel fails to press a particular argument on appeal, or fails to argue an issue as effectively as he or she might.  Rather, at the time the Court of Appeals first considered the merits of petitioner's appeal, appellate counsel had already been granted leave to withdraw; petitioner was thus entirely without the assistance of counsel on appeal.  In fact, the only relief that counsel sought before the Court of Appeals was leave to withdraw, an action that can hardly be deemed advocacy on petitioner's behalf.  It is therefore inappropriate to apply either the prejudice requirement of *Strickland* or the harmless-error analysis of *Chapman*.

*Id.* at 88.  The Supreme Court emphasized that "[t]he need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to appellate stage," and, "[b]y proceeding to decide the merits of [the] petitioner's appeal without appointing new counsel to represent him, the Ohio Court of Appeals deprived both petitioner and itself of the benefit of an adversary examination and presentation of the issues."  *Id.* at 85.

In *Smith v. Robbins*, the Supreme Court clarified that the *Anders* procedure itself is not obligatory on the states, because it serves as a "prophylactic

framework," rather than "an independent constitutional command." *Smith*, 528 U.S. at 273.  States are free to craft their own frameworks for ensuring adequate appellate review, as they have "wide discretion . . . to experiment with solutions to difficult problems of policy." *Id.* at 273.  Yet this discretion remains "subject to the minimum requirements of the Fourteenth Amendment." *Id.*  For example, the *Smith* Court maintained that the state appellate court scrutinized in *Penson* had violated the right to effective appellate review by permitting a "procedure that . . . allowed a court to decide the appeal without counsel even if the court found arguable issues." *Id.* at 280 (citing *Penson*, 488 U.S. at 82).  Likewise, the state appellate procedure examined in *Smith* did not violate the *Douglas* right to adequate appellate review, in part, because the state court would "order briefing" if it found arguable issues. *Id.* at 281.  The Supreme Court also reaffirmed its presumption of prejudice for the actual or constructive denial of counsel through an inadequate appellate procedure. *Id.* at 286 ("Our holding in *Penson* was consistent with *Strickland* itself, where we said that we would presume prejudice when a defendant had suffered an '[a]ctual or constructive denial of the assistance of counsel altogether.'") (citation omitted).  This line of cases, beginning with *Douglas*, continuing with *Anders* and *Penson*, and culminating in *Smith*, were all clearly established at the time of the state court decision in this case.

### 2. Section 2254(d)

Analysis under Section 2254(d) is not a *de novo* review; thus, it is not sufficient for the Court to conclude that the state court erred.  Instead, the Court

must "determine whether there is any reasonable theory, consistent with clearly established federal law as determined by the Supreme Court," to support the state court's conclusion that De La Rosa's right to adequate appellate review was not violated. *Floyd v. Vannoy*, 894 F.3d 143 (5th Cir. 2018). "The decision is an 'unreasonable application' under 28 U.S.C. 2254(d) only if, after this hypothetical inquiry, [the Court] determine[s] there was no reasonable basis for it." *Id.*

The first, and simplest, possible theory is that the TCCA examined the Thirteenth Court's final decision in the case—stating that it had examined the record and found no arguable basis to support the appeal—and deferred to its review, concluding that the Thirteenth Court had properly examined the record for possible arguable issues and found none. But this conclusion would have been unreasonable under Supreme Court precedent, given the Thirteenth Court's *earlier* finding of arguable appellate issues, none of which were ever briefed by counsel. Once Garza, De La Rosa's initial appellate counsel, submitted his *Anders* brief, the appellate court held:

> A court of appeals has two options when an Anders brief and a subsequent pro se response are filed. After reviewing the entire record, it may: (1) determine that the appeal is wholly frivolous and issue and opinion explaining that it finds no reversible error; or (2) determine that there are arguable grounds for appeal and remand the case to the trial court for appointment of new counsel. *If the court finds arguable grounds for appeal, it may not review those grounds until after new counsel has briefed those issues on appeal.*
> After our independent review, we conclude that there are "arguable" appellate issues in this case. For instance, appellant has briefed issues pertaining to jurisdiction, the right to appeal, and the completeness of the appellate record. We note that this matter has been plagued by repeated difficulties in assembling the appellate record. We further note that appellate counsel did not have the entire

34/51

record when he filed his Anders brief.  We stress that this is not an exhaustive list of arguable issues that could be raised on appeal and, further, that we have not determined that any of these arguments have merit.

Dkt. No. 18-10 at 3 (citations omitted) (emphasis added).  The appellate court opted for the second option it had described; it found that there were arguable issues and remanded the case to the trial court for appointment of counsel.  RuBane was appointed to represent De La Rosa.  However, despite the appellate court's previous finding of arguable issues, these issues were never briefed.  RuBane instead submitted an *Anders* brief which restated some of the points made by Garza—none of which had been identified by the appellate court as arguable.  The appellate court, in its subsequent memorandum opinion, did not mention RuBane's failure to address the arguable issues, or even acknowledge that it had previously identified three arguable appellate issues.[6]

This appellate process did not comport with the holding of *Penson*, that a court may not decide the merits of an appeal without counsel after a finding of arguable issues, or *Smith*, in which the Supreme Court recognized that the right established by *Douglas* was a right to receive a merits brief in a nonfrivolous appeal.  The appellate court rendered De La Rosa's appeal nonfrivolous when it identified three arguable appellate issues; this necessitated not only the appointment of new counsel but, according to the Supreme Court, a merits brief. *Smith*, 528 U.S. at 280.  The Thirteenth Court correctly facilitated appointment of

---

[6] The Thirteenth Court stated that it had abated the appeal for appointment of counsel to determine what constituted a complete record.  An abatement of this kind had, in fact, taken place, but at an earlier juncture in the appellate process.  Dkt. No. 19-3 at 61–62.  The abatement for appointment of counsel after a finding of "arguable appellate issues" occurred over five months later.

counsel for De La Rosa, but its subsequent process did not protect the indigent criminal appellant's right, under Supreme Court precedent, to a merits brief in a nonfrivolous appeal. This deprived De La Rosa of a critical component of the appellate process for nonfrivolous appeals, and enabled the appellate court to decide the merits of the appeal without affording any meaningful counsel for the indigent appellant.  For the TCCA to accept the Thirteenth Court's retroactive determination that the appeal was frivolous would have disregarded Supreme Court precedent obligating the appellate court to (1) require a merits brief once an appeal is found to be nonfrivolous, (2) direct the filing of the merits brief to address arguable issues before deciding the merits of the case, and (3) not adjudicate the merits of the appeal without ensuring the appellant receives representation.  After identifying "arguable appellate issues" in the case, the Thirteenth Court decided the merits of De La Rosa's appeal without receiving any briefing on those issues.  Therefore, the Thirteenth Court's memorandum opinion could not have provided the TCCA with a basis for denying relief consistent with Supreme Court precedent.

Relatedly, the second possible theory supporting the TCCA's decision is Respondent's contention that the Thirteenth Court fulfilled its constitutional obligations to ensure adequate appellate review by abating the appeal for appointment of counsel upon its finding of arguable issues.  Respondent asserts that "there is no clearly established Supreme Court precedent requiring the appointment of a third appellate attorney when the second files a second *Anders* brief."  Dkt. No. 77 at 38.  She states:

> In his Pro Se Response, [De La Rosa] cites *Penson v. Ohio* for the proposition that the Thirteenth District Court of Appeals should have appointed appellate counsel when it found 'arguable issues.' It did, of course. That Rubane filed another *Anders* brief does not violate the Constitution, and *Penson* does not say so.

Dkt. No. 77 at 31–32. Respondent's theory may be restated as follows: upon a finding that there are arguable issues in the case, an appellate court fulfills the "constitutional imperative that counsel be appointed" by facilitating the appointment of an attorney who files a recycled *Anders* brief and never addresses any of the identified arguable issues. Guided by the Supreme Court's clearly established precedent, the Court concludes that this, too, is objectively unreasonable.

A court's role in ensuring adequate appellate review is not complete the moment an attorney is appointed. In what the appellate court had deemed to be a nonfrivolous appeal, De La Rosa had a right not only to the appointment of counsel, but to a merits brief. *Smith*, 528 U.S. at 280. Consistent with this right, one of the requirements for ensuring an adequate appellate process is that "if [the] appellate court finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel *to argue the appeal.*'" *Penson*, 488 U.S. at 83 (emphasis added) (citation omitted). And "[o]f course, if the court concludes that there are nonfrivolous issues to be raised, it must appoint counsel to pursue the appeal and *direct that counsel to prepare an advocate's brief before deciding the merits.*" *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 444 (1988) (emphasis added); *see also Smith*, 528 U.S. at 280

(noting, under a procedure upheld as valid, "the court orders briefing if it finds arguable issues").  Given the responsibility of newly appointed counsel—to argue and pursue the appeal—and of the appellate court—to direct the counsel to fulfill her duty to file a merits brief before reaching the merits of the case—it would be unreasonable to conclude that the Thirteenth Court fulfilled its responsibilities simply by ensuring an attorney was appointed.  Said another way, the right to a merits brief in a nonfrivolous appeal cannot be satisfied by perfunctory appointment of counsel who then seeks leave to withdraw, addressing none of what the appellate court had already deemed to be arguable.

The TCCA's precedent recognizes this constitutional obligation.  *Garner v. State*, 300 S.W.3d 763, 767 (Tex. Crim. App. 2009) ("Certainly, if any of the appellant's pro se claims were found to have arguable merit, then his constitutional rights would require that he be provided with counsel to properly brief those grounds for review."); *see also Perryman v. State*, 159 S.W.3d 778, 778 (Tex. App.—Waco 2005) (per curiam) (remanding for appointment of a third appellate attorney after second counsel filed an *Anders* brief and failed to address what the appellate court had previously deemed to be "arguable issues").  The Thirteenth Court also seemed aware of this requirement in the earlier stages of De La Rosa's appeal.  It noted in its contempt order that, after RuBane had been appointed, the "appellant's brief was due to this Court" by a date certain.  Dkt. No. 17-20 at 1–2.  The Thirteenth Court's repeated emphasis on the need for an appellant's brief from RuBane—over the course of six extensions of time—would suggest that it continued

to understand the need for briefing.  But the appellate court did not follow this path to the conclusion required by Supreme Court precedent—representation for De La Rosa, by way of an actual merits brief.  It would have been unreasonable to conclude that the appellate court ensured effective appellate review by merely *requesting*—but not receiving—a merits brief on what it deemed arguable issues.

Another theory offered by Respondent is that the "deficiencies in the record were cured," and "[i]t is reasonable to conclude that the deficiencies must have been cured to the satisfaction of the court of appeals since it was surely cognizable of the issues it initially found arguable."  Dkt. No. 77 at 41.  This theory suggests that the appellate court no longer found the arguable issues to be arguable by the time RuBane filed her *Anders* brief.  A different way of stating this theory is that the appellate court changed its position on whether the "arguable issues" were, in fact, arguable.  This, too, would have been unreasonable.

At the outset, the appellate court never indicated that any supplements to the record had solved the "arguable issues" to its satisfaction, as Respondent suggests.  The court never addressed the issues again after identifying them.  More importantly, however, the flaw in Respondent's theory is that it implies the appellate court did exactly what the Supreme Court held it could not do in *Penson*— decide the merits of an appeal with what it deemed "arguable issues" without affording De La Rosa the benefit of counsel *to argue his appeal*.

Respondent's theory of the court's decision-making process proves the point of De La Rosa's claim.  The process would have "allowed a court to decide the appeal

without counsel even if the court found arguable issues." *Smith*, 528 U.S. at 280 (citing *Penson*, 488 U.S. at 82). Under *Penson*, after a finding of "arguable issues" on appeal, an appellate court may not decide the merits without representation for the appellant. *Penson*, 488 U.S. at 85. And, dispelling any doubt as to what this representation must entail, the *Smith* Court held that the right violated in *Penson* was the right to a merits brief in a nonfrivolous appeal. *Smith*, 528 U.S. at 280. That the appellate court could find arguable issues, but then change its position and decide the merits of those issues, without receiving an advocate's brief or even an *Anders* brief addressing them, is the sort of adjudication of those issues foreclosed by the Supreme Court's precedent.

Penson* is clear: the ability to file an *Anders* brief is only a "limited exception" to the general rule that every indigent criminal appellant in a nonfrivolous appeal must receive representation in the form of a merits brief. *Penson*, 488 U.S. at 83-84; *see also Smith*, 528 U.S. at 276. But "once a court determines that the trial record supports arguable claims, *there is no basis for the exception* and, as provided in *Douglas*, the criminal appellant is entitled to representation." *Penson*, 488 U.S. at 84 (emphasis added). There certainly is no exception that would allow the appellate court to *sua sponte* reconsider the merits of the "arguable issues" without receiving any briefing on them from the appellant's newly appointed attorney, either by addressing why those issues would not prevail, or, as here, stating in a subsequent opinion that there are no arguable issues in the record. This precedent in mind, to conclude that the Thirteenth Court no longer found the issues arguable would have

been objectively unreasonable.

Another related theory supporting the state court decision is that "there [were] no 'arguable issues' so the failure to appoint a third appellate attorney did not harm De La Rosa." Dkt. No. 77 at 31. Respondent's assertion speaks to prejudice—she maintains that the arguable issues lacked merit, regardless of the appellate court's earlier finding that they were arguable. By the same token, a possible argument is that the TCCA could have determined for *itself* that there were no arguable appellate issues in the case and that the failure to appoint new counsel after RuBane filed an *Anders* brief would not have harmed De La Rosa.

The three "arguable appellate issues" were "jurisdiction, the right to appeal, and the completeness of the appellate record." Dkt. No. 77 at 36. First, Respondent asserts that the "issue concerning De La Rosa's right to appeal was settled" by a notation from the Thirteenth Court granting Garza's motion to establish De La Rosa's right to appeal the sentencing phase of the proceedings. Second, Respondent argues that "De La Rosa was provided with the documents he believed were missing from the record[,]" solving the "completeness of the appellate record" issue. Third, Respondent argues that the "the district court had jurisdiction." Dkt. No. 77 at 36.

Respondent's arguments serve to demonstrate how counsel could have assisted both De La Rosa and the appellate court by briefing the "arguable issues." As to the first issue, the right to appeal, the Thirteenth Court record which Respondent claims to have cured the issue actually *predated* the determination that the "right to appeal" was an arguable issue. *Compare* Dkt. No. 18-12 (granting

motion to establish a limited right to appeal, on November 16, 2012) *with* Dkt. No.
18-10 (identifying the "right to appeal" as an arguable issue on January 6, 2014).
Regarding the second issue, completeness of the appellate record, it is correct that,
at an abatement hearing in the trial court, De La Rosa met with a prosecutor and
signed a stipulation stating the record had been completed to his satisfaction. But
De La Rosa was not represented by counsel at this hearing. If appellate counsel
had been required to file a brief on the merits, this fact could have been emphasized
to the appellate court. As for the third issue, the supplemented record contained
the juvenile court's waiver of jurisdiction, but did not encompass the entirety of the
juvenile court record.[7] De La Rosa's claim was that a review of the entire juvenile
court record would show he was indicted for conduct which was never presented to
the juvenile court, and could not have been part of its waiver of jurisdiction. Dkt.
No. 42-3 at 57–64. Through counsel, the appellate court could have been further
briefed on why De La Rosa believed more records were still needed. De La Rosa's
pro se filings, addressing these topics, could not have substituted for an appellate
advocate.

Most importantly, however, the Court need not address the merits of any of
these "arguable issues." It was the Thirteenth Court that deemed the issues to be
arguable, and whether the issues have merit or not is outside the scope of what the
TCCA must have considered to decide De La Rosa's claim, and outside the scope of

---

[7] To the Court's knowledge, the first time the entire juvenile court record has been assembled for
review was over the course of this federal habeas case. Dkt. Nos. 62, 65, 71. And, even in this case,
Respondent filed the juvenile record in two parts, stating initially that "[i]n response to [her] request
for the record, the Cameron County Clerk's Office sent only part of the record." Dkt. Nos. 67, 72.

this federal habeas review.[8]   The process employed by the Thirteenth Court deprived De La Rosa of the central function the Supreme Court has determined an appellate attorney must provide in a nonfrivolous appeal, the filing of a merits brief. Because this function was never fulfilled, De La Rosa was constructively denied the assistance of counsel and prejudice was to be presumed.  *Penson*, 488 U.S. at 83. This presumption of prejudice, prescribed by the Supreme Court for constitutional violations of the kind found in *Penson*, renders any consideration of the merits of the arguable issues inappropriate.

Challenges to an appellate attorney's conduct typically mandate application of the *Strickland* test, which considers whether (a) counsel's performance was deficient, and (b) whether the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see, e.g.*, *Hughes v. Booker*, 220 F.3d 346, 349 (5th Cir. 2000) ("[W]here a petitioner argues that counsel failed to assert or fully brief a particular claim, he must show that his attorney's performance was both deficient and prejudicial.").  However, Ground One is not a claim for ineffective assistance of appellate counsel.  De La Rosa not only alleges that RuBane should have filed a merits brief instead of an *Anders* brief, or that she should have raised certain issues on appeal, either of which would implicate a

---

[8] That the state appellate court identified the arguable issues distinguishes the facts of this case from *Smith v. Robbins*, where a federal district court and federal circuit court determined that there were arguable issues during habeas review.  Another important distinction to draw is that it was clear in this case what the appellate court was referring to by "arguable" issues.  *Smith* questioned whether the lower federal courts had used "arguable" to mean the appeal was nonfrivolous, thus "warranting a merits brief," or "arguable" to mean that counsel should have included them in his *Anders* brief as issues "arguably supporting the appeal even though the appeal was wholly frivolous." 528 U.S. at 285.  Here, it is clear the Thirteenth Court used "arguable" to indicate that De La Rosa's appeal was nonfrivolous.  This is apparent by the court's accompanying abatement of the case for appointment of counsel, which would have otherwise been unnecessary.

prejudice analysis. *Smith*, 528 U.S. at 286, 288. Instead, Ground One pertains to De La Rosa's deprivation of his right to effective appellate review through the appellate court's decision to not *require* an advocate's brief from RuBane after its finding that there were arguable issues in the case, and to then decide the merits of the identified arguable issues without ensuring there was any advocacy on De La Rosa's behalf. Prejudice is presumed in situations where a defendant is actually or constructively denied counsel. *Strickland*, 466 U.S. at 692. One such situation is where appellate counsel withdraws from the case pursuant to a procedure that does not afford adequate and effective appellate review to indigent defendants. *Penson*, 488 U.S. at 88; *Hughes*, 220 F.3d at 349 (noting that if counsel did not follow a procedure that "afford[ed] adequate and effective appellate review to indigent defendants," the defendant was constructively denied counsel, and prejudice is presumed). The conduct of an attorney who properly files an *Anders* brief and withdraws pursuant to a valid appellate procedure is reviewed for prejudice. *Smith*, 528 U.S. at 286–87. But where an attorney seeks to withdraw pursuant to *invalid* procedures, actually or constructively denying counsel to the appellant, prejudice should be presumed. *Marshall v. Schriro*, 219 Fed. Appx. 689, 691 (9th Cir. 2006) ("[B]ecause *Penson* remains good law, prejudice may be presumed if an invalid procedure is followed by counsel in refusing to file a merits brief."); *see, e.g.*, *Lofton v. Whitley*, 905 F.2d 885, 888 (5th Cir. 1990) (presuming prejudice where "Lofton may have been formally represented by counsel, but the failure to raise any grounds for appeal was the equivalent of the attorney's withdrawal."); *Lombard v. Lynaugh*,

868 F.2d 1475, 1480 (5th Cir. 1989) (presuming prejudice and finding appellant was constructively denied counsel where attorney "did nothing to attempt to aid Lombard's appeal beyond the initial perfecting of the appeal itself").

That is what happened in this case. The process employed by the Thirteenth Court "functionally deprived the defendant of appellate representation altogether and . . . a showing of prejudice was not required under *Penson*." *Harris*, 226 F.3d at 365 (citation omitted). RuBane was appointed to represent De La Rosa once the appellate court's finding of arguable issues rendered the appeal nonfrivolous. After receiving six extensions of time to file a merits brief, and being held in contempt "for willfully and intentionally failing to comply" with court orders, RuBane moved to withdraw from the case. She did not provide even a cursory discussion of the identified arguable issues in her *Anders* brief, but instead only presented points raised by previous counsel, in significantly similar language. RuBane certainly did not fulfill De La Rosa's constitutional right under *Douglas* "to receive a merits brief in a nonfrivolous appeal." *Smith*, 528 U.S. at 262. RuBane's actions left De La Rosa virtually without representation at a critical stage of his appeal, when a court had already identified several issues that could be arguable and rendered his case nonfrivolous. De La Rosa did raise a number of arguments in pro se motions, some pertaining to the "arguable issues," and others indicating that he wanted an attorney to "fight his appeal." But he could not have been left to file his own pro se brief to address the "arguable issues" once the appellate court deemed his appeal to be nonfrivolous. This seems to have been what the appellate court expected, noting

during RuBane's contempt hearing, "I'm sure Mr. De La Rosa is going to want to file his own brief, and with the information we give him, he should be able to do that." Dkt. No. 18-2 at 6.  Because the appellate court did not ensure that De La Rosa had an attorney to fulfill the guarantee of a merits brief on the arguable issues, however, De La Rosa received no meaningful representation in his appeal, and was constructively denied his right to counsel.  *Marshall*, 219 Fed. Appx. at 691  (finding that counsel's "nominal representation did not supply Marshall with actual advocacy on his behalf," in part because counsel never briefed the point deemed arguable by a state court).

That RuBane was formally appointed to the case and filed an *Anders* brief, in the form of the "Appealant's Breif," does not change this calculus.  *See, e.g.*, *Delgado v. Lewis*, 223 F.3d 976, 981 (9th Cir. 2000) (presuming prejudice and granting habeas relief where counsel filed withdrawal brief, after state court certified two appellate issues); *Wells v. Howton*, No. 07–1117–TC, 2011 WL 5999356, at *2 (D. Ore. 2011) (presuming prejudice and granting habeas relief where appellate counsel filed only one "frivolous" argument in withdrawal brief).  "The formal physical presence of an appellate attorney is not appellate counsel."  *Lombard v. Lynaugh*, 868 F.2d 1475, 1487 (5th Cir. 1989) (Goldberg, J., concurring).  At a minimum, the appellate attorney must provide her client with "a thorough review of the record and a discussion of the strongest arguments revealed by that review."  *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 444 (1988).  "The appellate lawyer must master the trial record, thoroughly research the law, and exercise

judgment in identifying the arguments that may be advanced on appeal." *Id.* at 438. That an appellant may have the ability to submit his own pro se filings cannot replicate this role. *See Harris v. Day*, 226 F.3d 361, 365 (5th Cir. 2000) ("Though Harris presented pro se claims, *Anders* counsels that he was entitled to a lawyer's eye in reviewing his case and pointing out arguable issues for appeal, even if that lawyer decided to withdraw."). Where, as here, a case is found to be nonfrivolous through the identification of arguable issues, the role of the attorney is at its highest, and the "constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client[.]" *Anders v. California*, 386 U.S. 738, 744 (1967). The Fourteenth Amendment "demand[s] active and vigorous appellate representation of indigent criminal defendants" in such cases. *Penson*, 488 U.S. at 84. This obligation is fulfilled through the filing of a merits brief. *Smith*, 528 U.S. at 262.

Here, this obligation went unfulfilled. The appellate court facilitated RuBane's appointment, but her submission of an *Anders* brief after the finding of "arguable issues" does little to distinguish her from the attorney in *Penson*, who sought leave to withdraw without alerting the appellate court to any arguable issues. RuBane's *Anders* brief not only failed to address the designated arguable issues in the case, but it exclusively raised points that had already been considered by the Thirteenth Court upon submission of Garza's *Anders* brief. When the appellate court abated De La Rosa's appeal, it accepted none of Garza's points as arguable issues, instead delineating three other specific topics and stating that

Garza had not had access to a complete record. RuBane's reassertion of Garza's points—after the appellate court had explicitly found they were submitted on an incomplete record, and implicitly found they were *not* arguable issues—underscores the lack of any functional advocacy present in RuBane's *Anders* brief. The designated arguable issues went unexplored. As in *Penson*, "[t]he only relief that counsel sought before the Court of Appeals was leave to withdraw, an action that can hardly be deemed advocacy on petitioner's behalf." *Penson*, 488 U.S. at 87. Unlike in *Penson*, however, the imperative for advocacy in this case was even clearer because the appellate court had already identified the "arguable issues" for RuBane to present when she submitted an *Anders* brief. Because De La Rosa was denied this representation, he was constructively denied counsel, and prejudice was to be presumed. To conclude otherwise "ignores the clear import of *Penson*: once [a court] determine[s] that a defendant has been constructively denied appellate counsel . . . 'any discussion even flirting with the language of *Strickland*'s prejudice or harmless error analysis is unnecessary.'" *Hughes*, 220 F.3d 346 (5th Cir. 2000) (citation omitted). A disposition of this claim based on the merits of any of the arguable issues, therefore, would have been an unreasonable application of Supreme Court precedent.

In sum, the Court concludes that none of these possible theories or arguments could have supported the TCCA's denial of this claim. The Thirteenth Court did not provide a valid appellate process to De La Rosa when it identified "arguable appellate issues," then decided the merits of the appeal without ever

receiving briefing on those issues.  Because counsel was appointed, but failed to offer any advocacy on De La Rosa's behalf in any meaningful sense of the word, De La Rosa was constructively denied counsel and prejudice was to be presumed. Fairminded jurists could not disagree that the denial of De La Rosa's claim regarding this appellate review was "contrary to, or an unreasonable application of" clearly established Supreme Court precedent, which has made manifest the right to a merits brief in an appeal with arguable issues.  Therefore, while the AEDPA's standard is "difficult to meet," because "it was meant to be," the Court concludes that the state court's summary denial of this claim was an objectively unreasonable decision implicating the safeguards of Section 2254(d).  De La Rosa is entitled to federal habeas relief on this claim.

This leaves the Court with the question of an appropriate remedy.  Under 28 U.S.C. § 2243, federal courts may dispose of habeas corpus matters "as law and justice require."  28 U.S.C. § 2243.  The remedy most appropriate where there has been a deprivation of effective appellate review is a restored opportunity for appellate review, with the assistance of competent counsel. *Hughes v. Booker*, 220 F.3d 346, 348 (5th Cir. 2000) (affirming district court's decision that § 2254 petition be granted unless an out-of-time direct appeal was extended, where state court's decision was based on an unreasonable application of *Penson*); *Harris v. Day*, 226 F.3d 361, 367 (5th Cir. 2000) (reversing district court's denial of habeas relief, and remanding for entry of judgment granting the § 2254 petition unless the state afforded the petitioner an out-of-time appeal with the assistance of competent

counsel); *Loftin v. Whitley*, 905 F.2d 885, 890 (5th Cir. 1990) (same); *Lombard v. Lynaugh*, 868 F.2d 1475, 1484 (5th Cir. 1989) (granting out-of-time appeal to remedy constructive denial of appellate counsel).  The Court recommends that De La Rosa receive the opportunity to pursue an out-of-time appeal.  To facilitate this process, the case should be remanded to the state trial court in which De La Rosa was convicted for a reentry of judgment, beginning anew the time period for De La Rosa to file a notice of appeal.  Because De La Rosa is entitled to relief as a matter of law on Ground One, entitling him to an out-of-time appeal, the Court will not address the remainder of his claims.

There is no doubting the severity of the crime for which De La Rosa was convicted.  Yet, like any other criminal appellant, De La Rosa was guaranteed the right to effective and adequate appellate review.  Clearly established law required this right be safeguarded with the assistance of competent counsel, and, after a finding of arguable issues, vindicated through an advocate's brief on the merits. These constitutional guarantees went unfulfilled, in violation of Supreme Court precedent, and the Court has found no reasonable theory that could have supported the state court's summary denial of this claim.  Therefore, De La Rosa's Petition should be **GRANTED** as to Ground One, unless an out-of-time appeal is extended. It is recommended that the case be **REMANDED** to the 107th Judicial District Court, for reentry of judgment upon which the time for De La Rosa to file a notice of appeal will begin anew.  Given the disposition of Ground One and its corresponding remedy, the Court need not reach the remainder of De La Rosa's claims.

Respondent's Motion for Summary Judgment should be **DENIED**, because she has not satisfied her burden in showing she is entitled to judgment as a matter of law.

## VI.  Recommendation

It is recommended that (1) Respondent's Motion for Summary Judgment be **DENIED**, (2) De La Rosa's Petition be **GRANTED**, unless an out-of-time appeal is extended, and (3) this case be **REMANDED** to the 107th Judicial District Court, for reentry of judgment upon which the time for De La Rosa to file a notice of appeal will begin anew.

## VII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 25th of July, 2018.

**Ignacio Torteya, III**
**United States Magistrate Judge**